UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                      :

JOHN M. DRAGHI,                   :         Case No.: 15-cv-6147 (KBF)
                                        :
                       Plaintiff,      :
      vs.                                  :
                                        :
BELL SPORTS, INC.,               :
                                        :
                       Defendant.      :
                                        :
                                        :
-------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BELL SPORTS, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## Table of Contents

Table of Authorities ............................................................................................................... ii

Preliminary Statement ............................................................................................................. 1

Statement of Facts ................................................................................................................... 2

    **A.** The Accident ................................................................................................................ 2

    **B.** The Complaint .............................................................................................................. 3

    **C.** Multi-Directional Impact Protection System ("MIPS")

        Technology ................................................................................................................ 6

    **D.** The Helmet and Plaintiff's Failure to Read the Warnings ................................................. 8

Argument ............................................................................................................................... 10

    **I.** Legal Standard for Failure to Warn Claims ................................................................ 10

    **II.** Bell Had No Duty to Warn Plaintiff about MIPS Technology,

        Which Bell Had Not Tested and Did Not Incorporate its

        Products Prior to the Accident ..................................................................................... 11

    **III.** Plaintiff's Warnings Claims Also Fail as a Matter of Law

        Because Plaintiff Cannot Establish Proximate Causation ......................................... 15

Conclusion ............................................................................................................................. 18

# Table of Authorities

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009)……………………………………………………………….6

*Bell Atl. Corp v. Twombly,*
    550 U.S. 544, 570 (2007)……………………………………………………………….6

*Cover v. Cohen,*
    61 N.Y.2d 261, 274-277 (N.Y. 1984). ………………………………………11, 12, 13, 14

*Fane v. Zimmer, Inc.,*
    927 F.2d. 124, 128 (2d Cir. 1991). …………………………………………………………10

*Fredette v. Town of Southampton,*
    944 N.Y.S.2d 206 (App. Div. 2012). ………………………………………………15, 16, 17

*Glucksman v Halsey Drug Co.,*
    160 AD2d 305, 307 (App. Div. 1990). …………………………………………………15

*Guadalupe v Drackett Prods. Co.,*
    253 AD2d 378 (App. Div. 1998). …………………………………………………………15

*In re Jones Eastern and Southern Dist. Of N.Y. Asbestos Litigation,*
    897 F.2d. 626, 637-38 (2d Cir. 1990). ……………………………………………………..10

*Mussara v. Mega Funworks*
    952 N.Y.S.2d 568 (App. Div. 2012). ……………………………………………………..15, 16

*Rastelli v. Goodyear Tire & Rubber Co.,*
    79 NY2d 289, 297 (1992). ………………………………………………………………10

*Rochester Refrig. Corp. v Easy Heat,*
    222 AD2d 1013, *lv denied* 89 NY2d 817 (App. Div. 1995). ……………………………15

*Rodriguez v Davis Equip. Corp.,*
    235 AD2d 222 (App. Div. 1997). …………………………………………………………15

*Schumacher v. Richards Shear Co., Inc.,*
    59 N.Y.2d 239, 247 (N.Y. 1983). ………………………………………………………10

*Upfold v Generac Corp.,*
    224 AD2d 1021, 1022 (App. Div. 1996). …………………………………………………15

*Young v. Elmira Transit Mix., Inc.,*
    52 A.D.2d. 202 (N.Y. App. Div., 4th Dept., 1976). …………………………………...10

**Rules**

16 C.F.R. Part 1203 – Safety Standard for Bicycle Helmets…………………………………………14

**Statutes**

Fed .R. Civ. P. 56(a)…………………………………………………………………………… 2, 10

**Treatises**

Restatement (Second) of Torts § 388 & Comment and § 401 (1965)……..………………………..11

## PRELIMINARY STATEMENT

Plaintiff John Draghi alleges he sustained serious head injuries, including a skull fracture, in a bicycle accident that occurred on July 8, 2012 during the 2012 Aquaphor New York City Triathlon. In his Amended Complaint, Plaintiff alleges he was wearing a Giro Indicator bicycle helmet ("Giro Indicator") that was designed, manufactured, and sold by defendant Bell Sports, Inc. ("Bell"). However, Plaintiff no longer has the subject accident helmet, and there is a substantial dispute regarding whether the helmet he was wearing was a Giro Indicator helmet.

Plaintiff's vague four-count Amended Complaint alleges the Giro Indicator he was wearing experienced a "sudden and unexpected failure," but Plaintiff provides no specific contention regarding how the helmet failed. Plaintiff's Amended Complaint also contends this alleged failure was "due to the described defects," but the Amended Complaint fails to describe any defects. In short, the Complaint merely points to Plaintiff's injuries and implies there must be a defect without any description of what that alleged defect is. Given the loss of the subject helmet, there is no way to determine how it performed in the accident.

As set forth herein, once the vague allegations and conclusory statements are stripped away, nothing remains other than a novel claim that the Giro Indicator was defective simply because a newer technology existed which Bell allegedly had a duty to warn Plaintiff about. This claim is unsustainable. First, Bell did not incorporate this newer technology, multi-directional impact protection system ("MIPS"), into any of its helmets at the time of the subject accident. Even today, most bicycle helmets are sold without MIPS technology, but it is available if a bicyclist wants to spend the extra money for a MIPS helmet. Second, Plaintiff has conceded that he never read any product literature or warnings about the helmets he wore, and therefore, he cannot show that the lack of any warnings proximately caused his injuries.

In the instant motion, Bell seeks partial summary judgment relating to Plaintiff's warnings-based claims pursuant to *Fed. R. Civ. P.* 56(a).

**STATEMENT OF FACTS**

**A.    The Accident**

On July 8, 2012, Plaintiff John Draghi fell from his bicycle while participating in the 2012 Aquaphor New York City Triathlon.[1] Plaintiff cannot recall the circumstances of the accident, and he does not know how it occurred.[2] He does not know how he impacted the ground.[3] The accident occurred on a downhill slope in the road, and Plaintiff estimates that he may have been traveling at a speed of 30-35 mph.[4] Critically, Plaintiff cannot produce the helmet he was wearing at the time of the accident, and therefore, cannot establish that it was, in fact, a Giro Indicator helmet.[5] Also, Plaintiff cannot produce the subject bicycle because he sold it following the accident.[6]

To date, Plaintiff has identified only one eyewitness to the accident, Annice Alt.  Ms. Alt observed the bicycle portion of the triathlon from her ninth-floor apartment which overlooks the Henry Hudson Parkway and specifically the scene of the accident.[7]  Ms. Alt testified that as she was watching the bicycles ride along the Henry Hudson Parkway, she saw two bicycles collide.[8] According to Ms. Alt, one of the bicyclists got up, but the other one did not, so she called 911 to request an ambulance.[9] Ms. Alt does not know how Mr. Draghi was ejected from the bicycle, and she cannot provide any details regarding how the accident occurred.[10]  Moreover, she does not

---

[1] *See,* First Amended Complaint [D.E. 14] ("Am. Compl.") at ¶¶ 1, 13; *see also* Bell Sports, Inc.'s Statement of Undisputed Materials Facts Pursuant to F.R.C.P. 56 ("SUMF") at ¶ 1.
[2] SUMF at ¶ 2.
[3] SUMF at ¶ 3.
[4] SUMF at ¶ 4.
[5] SUMF at ¶ 5.
[6] SUMF at ¶ 6.
[7] SUMF at ¶ 7.
[8] SUMF at ¶ 8.
[9] SUMF at ¶ 9.
[10] SUMF at ¶ 10.

know anything about the helmet, including whether it remained on his head after he impacted the ground.[11]

Medical records produced by first responders indicate an assessment of Plaintiff at the accident scene revealed a "bleeding laceration to occipital"[12] and "bleeding from left ear," as well as abrasions to the left elbow, both hands, and both knees.[13] Operative reports indicate plaintiff sustained a right-sided brain subdural hematoma and a left parietal laceration with underlying nondisplaced skull fracture.[14]

### B.    The Complaint

On October 8, 2015, plaintiff filed his First Amended Complaint that sets forth four purported causes of action.[15] In the "Statement of the Claim" section, Plaintiff vaguely alleges that the helmet failed to function as expected, that there was a safer available design, and that Bell should have warned Plaintiff about this allegedly safer alternative design.[16] However, Plaintiff does not identify any specific defect in the subject helmet.[17]

In the first count, Plaintiff attempts to set forth a *prima facie* negligence claim by repeating many of the same conclusory allegations contained in the "Statement of the Claim" section. He generally alleges:  (1) a newer helmet technology existed at the time the subject helmet was sold; (2) Bell had a duty to inform him about this new technology; (3) and it failed to do so.[18] Significantly, plaintiff does not specify how the Giro Indicator was allegedly defective.[19] Rather, he only offers the following legal conclusion:

---

[11] SUMF at ¶ 11.
[12] The occipital bone is located at the rear lower portion of the skull.
[13] SUMF at ¶ 12.
[14] SUMF at ¶ 13.
[15] Am. Compl. at ¶¶ 24–87.
[16] *Id.* at ¶¶ 3-4, 17.
[17] *See id.* at ¶¶ 24–87.
[18] *See id.* at ¶¶ 24 – 44.
[19] *Id.*

> The SUBJECT helmet was, upon information and belief, dangerously defective, including, but not limited to, a lack of crashworthiness, in that an alternative and safe design was available prior to and at the time of the accident that would have greatly reduced, or completely eliminated, the danger and risk of harm in using the described GIRO helmet . . .[20]

There are no factual assertions regarding *how* the helmet lacked crashworthiness. There is also no allegation that the helmet was defective at the time it left Bell's control.

In an attempt to fit the foregoing bald assertions into the requisite legal frame work, plaintiff also provides the following recitations:

> The defendant, by and through their agents, servants, employees or predecessors in interest, designed, manufactured, fabricated, imported, distributed, retailed, wholesaled, recommended, tested, modified, controlled, advertised, created, processed, prepared, constructed, packaged, provided, warranted, repaired, maintained, marketed, labeled promoted, advertised, furnished, analyzed, inspected, supplied and placed into the stream of commerce the SUBJECT HELMET, including its component parts, helmet retention system, impact protection system, ingredients, packaging, attachments, associated warnings and constituents thereof, or lack of the same, in that there was a safer available design at the time of the manufacture, wholesale distribution and retail sale of the SUBJECT HELMET; and that the defendant further failed to inform the plaintiff of the availability of the safer available design to his detriment in that had a safer available design been known to plaintiff he would have availed himself to the safer design technology.[21]
>
> * * *
>
> . . . Said negligence included, but was not limited to, supplying inadequate and improper on-product and other warnings and instructions regarding the design defect in the subject helmet in that there was an alternative and safer design available prior to and at the time of the accident that would have greatly reduced, or completely

---

[20] *Id.* at ¶ 27.
[21] *Id.* at ¶ 26.

> eliminated, the danger and risk of harm and dangerous propensities
> of the aforementioned SUBJECT HELMET, upon which plaintiff
> relied, to his detriment.[22]

Specifically, Plaintiff claims that Multi-Directional Impact Protection System ("MIPS") technology "was available and in use by the bike helmet and helmet industry at large at the time of sale to plaintiff … on June 3, 2012" and "…the defendant failed to advise plaintiff of the availability of this safer alternative design."[23] Thus, the first count of the Amended Complaint seeks to impose this uniquely defined duty on Bell as the designer of the Giro Indicator.[24] Presumably, this duty would extend to all companies who sell bicycle helmets, regardless of whether they use MIPS technology in any of their helmets.

During the initial pretrial conference with the Court, Plaintiff's counsel summarized this claim as follows:

> What I believe my claim is against Bell Sports is that they failed to warn in [sic] the advancements in the state of the art which they should've stayed abreast of, and I believe I'm quoting from *Cover v. Cohen*, 61 N.Y.2d 261 (1984), "A manufacturer or retailer may, however, incur liability for failure to warn concerning dangers in the use of a product which come to his attention after manufacture or sale through advancements in the state of the art with which he is expected to stay abreast or through being made aware of later accidents involving dangers in the product of which warning should be given to users".[25]

Plaintiff's First Amended Complaint, however, does not include any allegations of what "dangers in the use of" the Giro Indicator model helmet came to the attention of Bell. Moreover, Plaintiff does not allege, or even suggest, that any and all helmets without MIPS-technology incorporated in them are dangerous. And, he does not cite any accident history or other support for this

---

[22] *Id.* at ¶ 31.
[23] *Id.* at ¶¶ 21–22.
[24] *Id.* at ¶¶ 24–44.
[25] *See* Affirmation of James C. Ughetta in Support of Bell Sports Inc.'s Motion for Partial Summary Judgment ("Ughetta Affirm."), Exhibit E at 9:7-18.

proposition. Instead, Plaintiff's counsel vaguely contends that the duty to warn discussion in *Cover* means that "[n]ewer, safer technology in the interim would trigger a warning to the users and purchasers that there is a new system…"[26]

In the second count of the Amended Complaint, Plaintiff asserts a vague strict liability claim that appears to duplicate the hybrid design defect and warnings negligence claims in the first cause of action.[27] The claim is premised on the same thinly pled facts.[28] The third count again repeats the same allegations contained in the preceding sections, but attempts to set forth an express warranty claim.[29] The fourth cause of action asserts an implied warranty claim.[30]

Bell answered the First Amended Complaint and denied all material allegations.[31] Further, Bell asserted that the First Amended Complaint failed to state a cognizable claim for relief.[32]

## C. Multi-Directional Impact Protection System ("MIPS") Technology

As an initial matter, it is important to note that Multi-Directional Impact Protection System ("MIPS") technology is intended to provide enhanced protection against brain injuries resulting from *rotation acceleration* forces imparted on the brain during certain impacts.[33] MIPS is *not* designed to reduce the risk of a skull fracture, which results form a *linear acceleration* impact to the head.[34]

A brief discussion of the basic elements of a bicycle helmet design is necessary to better understand MIPS and the nature of plaintiff's claims. The principal components of most bicycle

---

[26] *Id.* at 10:3-6.
[27] Am. Compl. at ¶¶ 45–55.
[28] *Ibid.*
[29] *Id.* at ¶¶ 56–71.
[30] *Id.* at ¶¶ 72–87.
[31] Bell Sports, Inc.'s Answer to First Amended Complaint [D.E. 18].
[32] *Id.* at page 12; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[33] SUMF at ¶ 14.
[34] SUMF at ¶ 15.

helmets include: (1) a thin outer shell; (2) a thicker inner liner, usually constructed of expanded polystyrene ("EPS")[35]; and (3) a series of cloth-covered pads attached to the EPS liner that assist in the fit the helmet to the head.[36] The EPS liner is designed to reduce linear (straight line) forces that could cause a skull fracture.[37] This basic helmet design has proven highly effective in reducing the risk of head and brain injuries from linear impacts.[38] Moreover, bicycle helmets are designed, tested and certified to a standard promulgated by the Consumer Product Safety Commission.[39] The Giro Indicator was tested and certified to the relevant CPSC certification standard.

In a helmet that contains MIPS, an additional liner is added between the EPS liner and the fit pads.[40] This very thin MIPS liner is designed to allow the head to slip/move within the helmet upon impact in order to potentially reduce rotational forces to the brain during certain oblique (angled) impacts to the helmet.[41] MIPS is *not* designed to reduce linear forces and related linear impact injuries like skull fractures.[42] MIPS is only designed to reduce rotational forces and related rotational brain injuries.[43]

Significantly, Bell did not sell helmets with MIPS technology until 2014.[44] Additionally, MIPS technology was never incorporated into the Giro Indicator model helmet.[45]

---

[35] Expanded polystyrene is a rigid closed-cell foam.
[36] SUMF at ¶ 16.
[37] SUMF at ¶ 17.
[38] SUMF ¶ 18; *see also* Ughetta Affirm., Exhibit G at 11712 – 11713 ("A widely-cited 1989 study . . . found that riders with helmets had an 85% reduction in their risk of head injury, and an 88% reduction in their risk of brain injury, when compared to cyclists without helmets").
[39] SUMF at ¶ 19.
[40] SUMF at ¶ 20.
[41] SUMF at ¶ 21.
[42] SUMF at ¶ 15.
[43] SUMF at ¶ 14.
[44] SUMF at ¶ 22.
[45] SUMF at ¶ 23.

### D. The Helmet and Plaintiff's Failure to Read the Warnings

Plaintiff's helmet was not recovered after the accident.[46] As such, there is no forensic evidence regarding the nature of the impact to the helmet or its condition at the time of the accident. Significantly, Bell disputes that Plaintiff was wearing a Giro Indicator model helmet at the time of the subject accident. Bell's corporate representative, Mr. Thom Parks, testified that the helmet in the post-accident photograph of Plaintiff – which is the only evidence that exists regarding the helmet Plaintiff was wearing – does not appear to be a Giro Indicator based on the layout of the air vents.[47] Specifically, Mr. Parks testified that the number of air vents, the length and width of the vents and the orientation of the vents differed between the Giro Indicator helmet and the helmet Plaintiff is wearing in the post-accident photograph.[48]

The Complaint alleges that Plaintiff purchased the subject helmet from Strictly Bicycles, Inc. on June 3, 2012, approximately one month before the race.[49] In support of this allegation, Plaintiff produced a receipt showing that he purchased a Giro Indicator model helmet from Strictly Bicycles on that date for $40.00.[50] In discussing the helmet he was wearing, however, Plaintiff testified as follows:

> Q.  Do you recall how long you had that bicycle helmet before the accident?
>
> A.  I think I purchased it a few months before the race.
>
> Q.  Do you know how much you paid?
>
> A.  No.
>
> Q.  Do you know if it was more or less than a hundred dollars?

---

[46] SUMF at ¶ 5.
[47] SUMF at ¶ 24.
[48] SUMF at ¶ 24.
[49] Am Compl. at ¶¶ 9-10.
[50] SUMF at ¶ 25.

> A.    It was more than a hundred dollars, that much I do know.[51]

Plaintiff further testified that he was generally familiar with the Giro line of helmets at that time, but he does not know why he chose this particular model. [52] He believes friends may have recommended that he buy a Giro-brand helmet.[53]

Plaintiff does not recall any details concerning the helmet purchase transaction.[54] He does not know if a Strictly Bicycles salesperson provided him with any information about the Giro Indicator helmet.[55] Plaintiff also conceded that he did not conduct any research before or after purchasing the helmet:

> Q.    Before you went to Strictly Bicycles to get his helmet, did you do any research about bicycle helmets?
>
> A.    No.
>
> Q.    Did you go on the Internet to look at bicycle helmets before you went to buy this helmet from Strictly Bicycles?
>
> A.    No, not that I recall.
>
> Q.    Had you seen any magazine articles or advertisements about this bicycle helmet before you bought it?
>
> A.    No.
>
> * * *
>
> Q.    Did you ever go on the Internet to look up Giro Indicator helmets or did you ever go on the Giro Indicator website to investigate the helmet you bought, after you bought it?
>
> A.    Not that I recall.
>
> Q.    Have you ever read anywhere at any time before your accident about how helmets work to afford head protection?

---

[51] SUMF at ¶ 26.
[52] SUMF at ¶ 27.
[53] SUMF at ¶ 28.
[54] SUMF at ¶ 29.
[55] SUMF at ¶ 30.

A.    No.

Q.    Have you ever read at any time anywhere before your accident about what sort of injuries helmets are designed to prevent?

A.    No.[56]

In sum, Plaintiff never read any of the warnings or literature that accompanied the helmet.[57] Further, he never sought any information concerning the design of the helmet.[58]

For the reasons set forth below, Bell hereby moves for partial summary judgment dismissing plaintiff's warnings claims pursuant to *Federal Rules of Civil Procedure* 56(a).

## ARGUMENT

## I.    LEGAL STANDARD FOR FAILURE TO WARN CLAIMS

The legal standard governing a negligence-based failure to warn claim is the same as the standard governing a strict liability warnings defect claim.[59] That is, a manufacturer has a duty to warn against latent hazards or defects resulting from foreseeable uses of its product of which it knew or should have known.[60] New York has traditionally followed The *Restatement (Second) of Torts* regarding warnings claims.[61] *Restatement* sections 388 and 401 state that where a product seller has distributed a hazardous or defective product without providing an adequate warning of the associated dangers, and that product has injured a user, the defendant may be liable to the user under a failure to warn theory if the retailer knew or had reason to know that the product was dangerous, or was likely to be dangerous, when used.[62]

---

[56] SUMF at ¶ 31.
[57] SUMF at ¶ 32.
[58] SUMF at ¶ 33.
[59] *Fane v. Zimmer, Inc.,* 927 F.2d. 124, 128 (2d Cir. 1991); *accord*, *In re Jones Eastern and Southern Dist. Of N.Y. Asbestos Litigation*, 897 F.2d. 626, 637-38 (2d Cir. 1990).
[60] *Rastelli v. Goodyear Tire & Rubber Co.*, 79 NY2d 289, 297 (1992).
[61] *See, e.g., Schumacher v. Richards Shear Co., Inc.,* 59 N.Y.2d 239, 247 (N.Y. 1983); *Young v. Elmira Transit Mix., Inc.*  52 A.D.2d. 202 (N.Y. App. Div., 4th Dept., 1976).
[62] *See Restatement (Second) of Torts § 388 & Comment and § 401 (1965).*

In addition to the duty to provide adequate warnings at the time of manufacture or sale, a manufacturer may also have a duty to warn concerning dangers in the use of a product which come to its attention after manufacture or sale, through advancements in the state of the art, with which it is expected to stay abreast, or through being made aware of later accidents involving hazards in the product of which warning should be given to users[63] Thus, although a product may be reasonably safe when manufactured and sold, and involve no then-known danger, if hazards are thereafter revealed, the court may impose a duty to warn.[64] This duty, however, requires that the product as-sold contain some danger or defect that the manufacturer was unaware of at the time of sale.

## II. BELL HAD NO DUTY TO WARN PLAINTIFF ABOUT MIPS TECHNOLOGY, WHICH BELL HAD NOT TESTED AND DID NOT INCORPORATE INTO ITS PRODUCTS PRIOR TO THE ACCIDENT.

Plaintiff claims that New York law imposes a duty on manufacturers and product sellers to warn the general public when a new, safer technology is developed. However, Plaintiff has not pointed to any authority in support of this argument, and Bell has not discovered any case that supports this proposition. Instead, the well-established body of case law states that a duty to warn *may* arise when a manufacturer learns of a specific product hazard or defect after it has been sold. Thus, Plaintiff would need to establish that all helmets are defective if they do not incorporate MIPS technology into the helmet design, *and* that the state-of-the art somehow imputed this knowledge to Bell prior to the date of the accident. Because Plaintiff cannot establish either of these criteria, his claim regarding Bell's purported duty to warn of the availability of bicycle helmets with MIPS technology must fail.

---

[63] *Cover v. Cohen*, 61 N.Y.2d 261, 274-277 (N.Y. 1984) (internal citations omitted).
[64] *Id.*

Plaintiff's reliance on *Cover v. Cohen* is misplaced. *Cover* does not stand for the proposition that a product designer has a duty to warn consumers regarding the availability of a new product with enhanced safety features. Rather, *Cover's* ancillary discussion of the post-sale duty to warn focuses on cases where a manufacturer learned about hazards associated with a product after it was sold. The fundamental underpinning to the discussion is the existence of a defect in the product as sold that the manufacturer became aware of after the sale of the product.[65]

In *Cover*, a 1973 Chevrolet Malibu malfunctioned, jumped a curb, and struck the plaintiff.[66] Plaintiff alleged that there was a defect in the automobile's throttle return spring. A Federal Motor Vehicle Safety Standard, which called for the use of a different spring, was issued after the car was manufactured and distributed, but before the subject accident. Also, General Motors issued a technical service bulletin regarding problems with the original spring approximately 13 months after the sale of the vehicle.[67]

With respect to the admissibility of the federal design standard, the Court noted that the issue before the jury was whether the original spring was reasonably safe, not whether it was the safest possible spring.[68] The Court held that the new design standard only established that a better design existed, not that the original design was unreasonably safe.[69] The Court also noted:

> [T]he proposal related to cars of many manufacturers, not just to Chevrolets or even all General Motors cars, and resulted in no requirement for recall or replacement of the springs previously in use by General Motors and other manufacturers of cars.[70]

---

[65] *Id.* at 275 -278.
[66] *Ibid.*
[67] *Id.*
[68] *Id.* at 272
[69] *Id.*
[70] *Id.*

In closing, the Court reiterated that the question before the jury was whether the original spring was defective, and that evidence of a new, superior design was not evidence of a defect.[71]

The *Cover* Court addressed the technical service bulletin in a similar fashion.[72] From the outset, the Court noted that the post-sale bulletin was not evidence of a defect because it did not relate to the design and risk status of the vehicle at the time of delivery.[73] However, the court noted the bulletin could be admissible in connection with a negligent failure to warn claim because it was evidence that there was a problem with the product as sold.[74]

In summarizing the relevant case law, the Court noted that although a product may be reasonably safe when manufactured and sold, hazards and defects thereafter revealed may create a duty to warn.[75] The Court also stated that "[w]hat notice to a manufacturer or vendor of problems revealed by use of the product will trigger his post-delivery duty to warn appears to be a function of the degree of danger which the problem involves and the number of instances reported."[76]

This case is clearly distinguishable from *Cover* and its progeny. Here, there is no evidence that the alleged Giro Indicator was defective as sold.  No specific defect is even alleged. Moreover, the alleged design is not unreasonably dangerous, and bicycle helmets without MIPS technology incorporated are still being sold by all helmet companies today.   Moreover, Bell has not received any prior complaints about the failure to incorporate MIPS technology, and no accident history is alleged.  Further, taking Plaintiff's claim to its logical conclusion would require a finding that *all bicycle helmets* on the market are defective if they do not include MIPS technology.

---

[71] *Id.*
[72] *Id.* at 274
[73] *Id.*
[74] *Id.*
[75] *Id.* at 275.
[76] *Id.* at 275-276.

Imposing a duty on Bell to warn of the availability of MIPS in bicycle helmets would be analogous to requiring automobile manufacturers to warn consumers of the availability of additional safety features, such as side-impact airbags, automatic braking technology, and countless other safety features available in the marketplace. Moreover, this duty would extend to all manufacturers, regardless of whether they had tested or incorporated such safety features into any of their vehicle models. Clearly, such a duty does not exist and there is no legal basis for imposing such a duty on Bell in this case.

Additionally, unlike in *Cover*, the relevant federal standard, 16 C.F.R. Part 1203 – Safety Standard for Bicycle Helmets,[77] has not changed, thereby necessitating action by Bell. Even today, there are no requirements that bicycle manufacturers incorporate MIPS technology into their helmets. Additionally, no post-sale changes to the design of the Giro Indicator, similar to what occurred in *Cover*, are alleged. In sum, *Cover* involved a specific problem discovered and reported after the sale of the vehicle. Those facts do not exist in this case.

Based on the foregoing, the court should reject Plaintiff's contention that Bell had a general duty to advise consumers about advancements in the state of the art. *Cover v. Cohen* does not stand for that proposition, nor does any reported case in New York. Accordingly, Bell is entitled to summary judgment dismissing Plaintiff's failure to warn claims to the extent they seek to impose a duty on Bell to warn about the availability of helmets incorporating MIPS technology.

## III. PLAINTIFF'S WARNINGS CLAIMS ALSO FAIL AS A MATTER OF LAW BECAUSE PLAINTIFF CANNOT ESTABLISH PROXIMATE CAUSATION

Although the Amended Complaint alleges that Plaintiff relied upon product warranty and warnings when he decided to purchase the helmet,[78] discovery has revealed this to be untrue.

---

[77] *See* Ughetta Affirm. Exhibit G.
[78] *See* Am. Compl. at ¶ 23.

Plaintiff has conceded that he did not rely on any product literature or warnings because he did not read any such information, he did not conduct any research on the helmet prior to purchasing it and he never sought any information on the design of the helmet.[79] As such, plaintiff cannot establish an essential element of his warnings claims: proximate cause.[80]

It is well-established that plaintiff bears the burden to prove defendant's failure to warn was a proximate cause of his injury.[81] Plaintiff also has the burden of proving he would have read and heeded a warning had one been given.[82] Plaintiff cannot meet this burden because he failed to read any warnings.[83]

In *Mussara v. Mega Funworks*, the court addressed a warnings defect claim in the context of a plaintiff who failed to read the warnings.[84] There, the defendant operator of a water park installed a new water slide and implemented a number of safeguards.[85] A "200-pound weight limitation, a height restriction, and [an] instruction to pull back on the [inner tube] handles were placed on several warning signs to the ride."[86] The plaintiff, who weighed in excess of the 200-pound weight limit, rode the slide and was injured.[87] The plaintiff admitted that he "checked the warning sign to see if his son was tall enough to qualify for the ride, but did not read the rest of

---

[79] *See* SUMF at ¶¶ 31-33.
[80] *Mussara v. Mega Funworks*, 952 N.Y.S.2d 568 (App. Div. 2012); *Fredette v. Town of Southampton*, 944 N.Y.S.2d 206 (App. Div. 2012).
[81] *Glucksman v Halsey Drug Co.*, 160 AD2d 305, 307 (App. Div. 1990).
[82] S*ee e.g. Guadalupe v Drackett Prods. Co.*, 253 AD2d 378 (App. Div. 1998); *Rodriguez v Davis Equip. Corp.*, 235 AD2d 222 (App. Div. 1997); *Upfold v Generac Corp.*, 224 AD2d 1021, 1022 (App. Div. 1996); *Rochester Refrig. Corp. v Easy Heat*, 222 AD2d 1013, *lv denied* 89 NY2d 817 (App. Div. 1995).
[83] *Mussara*, *supra*, 952 N.Y.S.2d 568.
[84] *Id.*
[85] *Id.* 570-71
[86] *Id.* at 571.
[87] *Id.*

the warnings."[88] Specifically, he did not read the 200-pound weight limitation warning.[89] Nonetheless, the plaintiff claimed the warnings were inadequate.[90]

The trial court granted the defendant's motion for summary judgment as to the plaintiffs' failure to warn claims, holding the plaintiffs had not established the necessary element of proximate cause linking the injuries and the warnings.[91] The appellate court affirmed the lower court's ruling on the failure to warn claim concluding: "[i]nsofar as the...cause of action... based upon a failure to warn, any failure to warn was not a proximate cause of the alleged injuries, as the injured plaintiff admitted that he read the height restriction on the warning sign but failed to read the rest of the warnings. In opposition, the plaintiffs failed to raise a triable issue of fact...."[92]

Similarly, in *Fredette v. Town of Southampton*, the appellate court found plaintiff could not establish proximate cause where he had failed to read the product warnings.[93] The plaintiff in *Fredette* sued the manufacturer of a motorcycle for injuries sustained in a motor vehicle accident.[94] The trial court denied the manufacturer's motion for judgment as a matter of law, but the appellate court reversed, finding that the plaintiff failed to raise a triable issue of fact.[95] Plaintiff alleged the motorcycle warnings regarding avoidance of hazards, the rider's positioning on the motorcycle, and the pre-inspection of riding areas were inadequate. However, during his deposition, plaintiff conceded he had "just looked through" the motorcycle's manual without recalling any particular pages or entries."[96] Based on the foregoing, the court held the plaintiff failed to establish proximate cause or otherwise raise a triable issue of fact regarding the adequacy of the warnings.

---

[88] *Id.*
[89] *Id.*
[90] *Id.* at 571.
[91] *Id.* at 572.
[92] *Id.*
[93] *Fredette v. Town of Southampton*, 944 N.Y.S.2d 206 (App. Div. 2012).
[94] *Id.* at 207.
[95] *Id.* at 207-208.
[96] *Id.* at 208.

Here, Plaintiff's Amended Complaint alleges that he "relied on the product literature and warranty information provided by the manufacturer and had plaintiff been made aware of this safer available design . . . plaintiff would have availed himself to [sic] that safer head retention design and purchased a helmet with the safer available MIPS technology.[97] Plaintiff further alleges that Bell was negligent for "supplying inadequate and improper on-product and other warnings and instructions regarding the design defect in the subject helmet in that there was an alternative and safer design available prior to and at the time of the accident that would have greatly reduced, or completely eliminated, the danger and risk of harm and dangerous propensities of the [Giro Indicator], upon which plaintiff relied, to his detriment."[98] However, Plaintiff's admissions during his deposition clearly establish that this claim is unfounded.

Plaintiff conceded that he has no recollection of reviewing the manual or any warnings that accompanied the helmet.[99] He also testified that he did not read anything about or doing any research regarding the subject bicycle helmet.[100] There is no dispute that he had no information concerning the design of the helmet or its various features at the time of purchase. And, he does not recall any details concerning the helmet purchase transaction.[101]

In sum, Plaintiff's warnings claims are unsustainable. Plaintiff admits he never read the warnings or product literature. He further conceded that prior to purchasing his helmet, he did not do any research or go on the internet to look at bicycle helmets, and he had not seen any advertisements or magazine articles discussing the helmet.[102] Without having ever read any warnings or product literature, Plaintiff cannot plausibly claim that he relied on anything Bell

---

[97] Am. Compl. at ¶ 23.
[98] *Id*. at ¶ 31.
[99] SUMF at ¶ 32.
[100] SUMF at ¶¶ 31-32.
[101] SUMF at ¶ 29.
[102] SUMF at ¶¶ 31-32.

included in its warnings. Similarly, he cannot establish that the absence of any warning or information impacted his purchase decision in any way. Accordingly, plaintiff cannot establish proximate cause and summary judgment is warranted.

## CONCLUSION

Plaintiff's vague allegations cannot be supported. Bell had no duty to warn Plaintiff of MIPS technology available in other manufacturers' helmets, and there is no evidence Plaintiff would have read or heeded any warnings if provided. As such, plaintiff cannot maintain a negligence or strict liability warnings claim and partial summary judgment, dismissing those claims with prejudice, is warranted.

Dated: May 16, 2016
      Purchase, New York

                                  Respectfully submitted,

                        By:      /s/ James C. Ughetta
                                  James C. Ughetta, Esq. (JU9571)
                                  B. Keith Gibson, Esq. (BG8063)
                                  LITTLETON JOYCE UGHETTA PARK & KELLY, LLP
                                  4 Manhattanville Road, Suite 202
                                  Purchase, New York   10577
                                  914-417-3400

                                  ***Attorneys for Defendant Bell Sports, Inc.***