LLOYD A. KATZ
875 Sixth Avenue, Suite 1802
New York, New York 10001
Tel.: (212) 379-8313
Fax: (212) 379-8311
Attn: Lloyd A. Katz (LK8498)
Email: lloydakatz@gmail.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x
JOHN M. DRAGHI,                                      15-cv-6147 (KBF)

                   Plaintiff,

                                                   **SECOND**

    -against-                                    **AMENDED COMPLAINT**

BELL SPORTS, INC.                         **JURY TRIAL: YES**

                   Defendant.
-----------------------------------------x

Plaintiff, by his attorney, Lloyd A. Katz, complaining of the defendant, upon information and belief, alleges as follows:

## PARTIES

1. Plaintiff, John M. Draghi, at all times relevant herein, was, and still is, a resident of the State of New York.

2. Plaintiff alleges that the defendant, BELL SPORTS, INC., is a California corporation maintaining its principal place of business in the State of California.

## BASIS OF JURISDICTION

3. Plaintiff alleges that on July 8, 2012 he sustained personal injuries, including a skull fracture, during a bicycling accident while a participant in the "2012 AQUAPHOR New York City Triathlon"; that the amount in controversy exceeds $75,000.00; that the parties are citizens of different states: that the occurrence complained of herein took place in New

1

York County; that the Court has original (diversity) jurisdiction over this case under 28 USC Section 1332.

## STATEMENT OF CLAIM

4. Plaintiff alleges that the defendant, BELL SPORTS, INC. and their predecessors in interest designs, manufactures and sells bicycle helmets, including the BELL SWEEP HELMET sold to plaintiff herein on or about July 31, 2008; that plaintiff was wearing a bicycle helmet manufactured, designed and sold by the defendant or their predecessor(s) in interest; plaintiff alleges causes of action against the defendant for negligence, strict product liability against defendant in the manufacture, design and sale of the subject helmet; that the helmet was defectively designed; that the design defect made the helmet not reasonably safe; that there was a safer available design at the time of design by defendant or their predecessors in interest; that there existed a safer available design at the rime that the helmet was distributed by defendant or their predecessors in interest; that there existed a safer available design at the time the helmet-was sold to plaintiff on July 31, 2008; that the defendant knew or should have known about the dangerous condition; that the helmet failed to function as expected; that there was a safer available design at the time of the accident of July 8, 2012.

5. Plaintiff alleges, upon information and belief, that the defendant, BELL SPORTS, INC., by and through their agents, servants, employees, and/or by and through their predecessor(s) in interest, conducted testing, including suitability testing, for BELL SWEEP HELMETS, including the subject BELL SWEEP bicycle helmet in this case, designed and sold by the defendant, BELL SPORTS, INC., or by their predecessor(s) in interest, whose rights and obligations have been expressly or impliedly assumed by the defendant, BELL SPORTS, INC.

6. Plaintiff alleges, upon information and belief, that at all times relevant herein, "TOGA WESTSIDE" was an authorized retailer for BELL SWEEP HELMETS in the United States.

7. Plaintiff alleges that on July 31, 2008, TOGA WESTSIDE sold plaintiff, John Draghi, a BELL SWEEP bicycle helmet [the "SUBJECT HELMET"].

8. Plaintiff alleges that on July 8, 2012 plaintiff, John Draghi, was wearing a BELL SWEEP bicycle helmet.

9. At all times herein relevant, plaintiff John Draghi purchased, owned and used the subject BELL SWEEP bicycle helmet, including all of its component parts, retention system, ingredients, packaging, mounting, associated warnings, and constituents thereof.

10. The acts, conduct, and nonfeasance herein carried out by each and every representative, employee or agent of the defendant, BELL SPORTS, INC., upon information and belief, was authorized, ordered, and directed by the defendant's corporate or business officers, directors_ and/or managing agents; that in addition thereto, said corporate or business employees, officers, directors and/or managing agents had advance knowledge of, authorized, and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of them; and that in addition thereto, upon the completion of the aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers, directors and/or managing agents respectively ratified, accepted the benefits of, condoned and approved of each and all of said acts, conduct or nonfeasance of their co-employees, employees and agents.

11. The subject incident described herein below, and all of the personal injuries, harm, losses and other damages alleged herein, took place and were incurred and suffered by plaintiff, JOHN M. DRAGHI, as he was a riding his bicycle as a participant in the 2012 AQUAPHOR New York City Triathlon in the northbound designated roadway of the Henry Hudson Parkway, County of New York, State of New York (hereinafter referred to as the "SUBJECT LOCATION").

12. On the morning of July 8, 2012, plaintiff, JOHN M. DRAGHI, experienced a bicycle crash while proceeding southbound at the SUBJECT LOCATION, while wearing the SUBJECT HELMET, and sustained life-altering injuries.

13. At all relevant times while wearing the SUBJECT HELMET on July 8, 2012, plaintiff, JOHN M. DRAGHI, was using the SUBJECT HELMET properly, in a reasonably foreseeable manner, and in accordance with the manufacturer's instructions.

14. On July 8, 2012, while plaintiff JOHN M. DRAGHI was wearing the SUBJECT HELMET at the SUBJECT LOCATION, plaintiff fell and struck his head on the ground below, leading to his head injuries, including but not limited to a fractured skull under that portion of the SUBJECT HELMET that the SUBJECT HELMET is designed to protect.

15. On July 8, 2012, while plaintiff JOHN M. DRAGHI was wearing the SUBJECT HELMET at the SUBJECT LOCATION, plaintiff fell and struck his head under that portion of the SUBJECT HELMET that the SUBJECT HELMET is designed to protect on the ground below, leading to his head injuries, including, but not limited to, a linear skull fracture underlying a three (3) to four (4) centimeter left-sided full thickness laceration of the skull, under that portion of the SUBJECT HELMET that the SUBJECT HELMET is designed to protect.

16. That an alternative and safer design was available prior to and at the time of the accident that would have greatly reduced, or completely eliminated, the danger and risk of harm in using the described BELL SWEEP helmet.

17. The Bell Sweep Bicycle Helmet that plaintiff was wearing on the day of the accident is defective. It is not reasonably safe because it allowed plaintiff to receive head and brain injuries on the temporal/parietal region of plaintiff's skull, which is a part of the head that helmets are designed to cover and protect, and is a part of the skull helmets are especially designed to prevent. The retention system and the

4

apparent retention system, as well as, the helmet sizing did not keep the head covered properly. Mr. Draghi received a skull fracture, a scalp laceration high on the head well under the helmet, and a closed brain injury with the helmet on his head. The Snell approved Specialized Bicycle helmet was comparable to the Bell Sweep in cost and use. The sizing of the Specialized Bicycle helmet makes a better and safer fit for plaintiff, whose head-size, upon information and belief, is 59 cm.

18. Upon information and belief, the left side of temporal/parietal region of plaintiff's skull, a portion of the head that helmets are especially designed to prevent, would have been better protected had plaintiff been wearing the Specialized Bicycle helmet at the time of his accident. Upon information and belief, at the time of sale, July 31, 2008, sizing of the SPECIALIZED BICYCLE HELMET and the BELL Sweep was as follows: SPECIALIZED Medium 21.25" - 23.50" (54 - 60 cm), Large 22.5" - 24.75" (57 cm - 63 cm) BELL SWEEP Medium: 21.75" - 23.25" (55 - 59 cm), Large: 23.25" - 24.75" (59 cm - 63cm).

19. Upon information and belief, had plaintiff been wearing the Specialized Bicycle helmet in either a medium or large large size at the time of his accident, he would not had suffered the injuries as above described. The Specialized Bicycle Helmet was a better and safer fit for plaintiff's head size than the Bell Sweep in either a medium or large size.

20. That, upon information and belief, Defendant participated in the design sale and maintenance of the subject BELL SWEEP bicycle helmet; Defendant maintained, installed and assembled the product which contained a defective condition because the design was defective and unsafe in that a safer alternative design was available; Defendant maintained, installed and assembled the product which contained a defective condition because the design was defective and unsafe-in-that a safer alternative design was available at the time the product was sold and/or distributed by defendant; Defendant maintained, installed and assembled the product which contained a defective condition because the design was defective and unsafe in that a safer alternative design was available at the time of injury to

5

plaintiff; This design defect made the product not reasonably safe; The helmet as designed and sold by Defendant remained unchanged and was in the same condition at the time of the injury hereafter alleged; As a direct and proximate cause of Defendant's negligence in the design and sale of the defectively designed product, Plaintiff sustained permanent injury.

### AS AND FOR A FIRST CAUSE OF ACTION FOR NEGLIGENCE

21. Plaintiff repeat, reiterate and incorporate here by reference all of the foregoing paragraphs of this Complaint, and repeat all assertions and allegations of said paragraphs as though set forth here in full.

22. Proper protective helmets are and should be designed and manufactured to minimize the risk of permanent impairment or death to bicycle riders. Bicycle helmets, including the SUBJECT HELMET, are intended to protect the rider's head from impacts with foreseeable foreign objects that might be encountered, including but not limited to the SUBJECT ROADWAY.

23. The defendant, by and through their agents, servants, employees or predecessors in interest, designed, manufactured, fabricated, imported, distributed, retailed, wholesaled, recommended, tested, modified, controlled, advertised, created, processed, prepared, constructed, packaged, provided, warranted, repaired, maintained, marketed, labeled promoted, advertised, furnished, analyzed, inspected, supplied and placed into the stream of commerce the SUBJECT HELMET, including its component parts, helmet retention system, impact protection system, ingredients, packaging, attachments, associated warnings and constituents thereof: or lack of the same, in that their was a safer available design at the time of the manufacture, wholesale distribution, and retail sale of the SUBJECT HELMET.

24. The SUBJECT HELMET was, upon information and belief, dangerously defective, including, but not limited to, a lack of crashworthiness, in that an alternative and safer design- was available prior to and at the time of the accident that would have greatly reduced, or completely eliminated, the danger and risk of harm in using the described BELL SWEEP

6

helmet, and failing to adequately test, document and determine the dangers of using the product; in that an alternative and safer design was available at the time of the wholesale distribution and retail sale of the subject helmet, and prior to and at the time of the accident, that would have greatly reduced, or completely eliminated the danger and risk of harm in using the described BELL SWEEP helmet and a failure to meet applicable industry and reasonable engineering standards and other requirements applicable to bicycle helmets and bicycle safety equipment.

25. The defendant, their employees, agents, directors, officers, stockholders, partners, associates, and predecessors in interest, had a legal duty to adequately and properly manage and operate their business and their manufacturing, distribution, and retail operations; to adequately and properly train and supervise their employees and agents, their designers, inspectors, quality control agents and other manufacturing, testing, distribution and delivery personnel; and to act without negligence, or other wrongful conduct.

26. The defendant, their employees, agents, directors, officers, stockholders, partners, associates and predecessors in interest, upon information and belief, failed to properly manage and operate their business and their design, manufacturing and distribution centers; failed to adequately and properly train and supervise their employees and agents, designers, inspectors, quality control agents and other manufacturing, distribution and personnel; failed to act without negligence, conscious disregard or other wrongful conduct that, among other things to be discovered, said defendant failed to properly conduct themselves, adequately interact and coordinate business matters with others; and failed to properly train and supervise their employees and agents regarding employment duties, and the design, test, inspection, delivery, demonstration and advertising of their merchandise, including, but not limited to the SUBJECT HELMET, and other related business matters.

27. Said failures by the defendant including the designers, manufacturers, distributors and retailers, upon information and belief, constituted a breach of the aforementioned

duties that in a foreseeable manner, legally and proximately caused the serious and permanent injuries and other damages to plaintiffs herein asserted.

28. Defendant, upon information and belief, negligently sold, designed, manufactured, fabricated, distributed, whole-saled, tested, modified, controlled, created, processed, constructed, packaged, utilized, provided, warranted, repaired, maintained, marketed, bought, rented, vended, installed, handled, compounded, furnished, analyzed and supplied, and placed into the stream of commerce, the SUBJECT HELMET, including, but not limited to, its component parts, helmet retention system, impact protection system, ingredients, packaging, attachments, associated warnings, and constituents thereof, and lack of the same.

29. In conducting their business, and in selling, designing, manufacturing, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, supplying, and placing into the stream of commerce the aforementioned SUBJECT HELMET, including their employees, agents, directors officers, stockholders, partners, associates and predecessors in interest, and 'each of them, upon information and belief, either lacked or failed to use the knowledge and skill ordinarily possessed by similarly-situated persons, companies, designers, manufacturers, testers, assemblers, inspectors, distributors, retailers and suppliers of such products.

30. On or about July 8, 2012, plaintiff JOHN M. DRAGHI was riding his bicycle at the SUBJECT LOCATION.

31. On or about July 8, 2012, plaintiff JOHN M. DRAGHI was riding his bicycle at the SUBJECT LOCATION as a participant in the 2012 Aquaphor New York City Triathlon.

32. At all relevant times while riding his bicycle on July 8, 2012 plaintiff JOHN M. DRAGHI was wearing and using the SUBJECT HELMET properly, and in accordance the manufacturer's instructions.

33. As described hereinabove, on July 8, 2012, JOHN M. DRAGHI'S bicycle crashed.

34. When JOHN M. DRAGHI'S bicycle crashed he was wearing and using the SUBJECT HELMET in an intended foreseeable manner, yet the SUBJECT HELMET failed to protect his head from severe permanent injury.

35. The defendant negligently failed to provide safe and adequate head protection system and helmet retention systems in the SUBJECT HELMET.

36. Upon information and belief, as a direct, legal and proximate result of the negligence, of the defendant as described above, when the plaintiff, JOHN M. DRAGHI came into contact with the SUBJECT ROADWAY, his head, brain, and other areas of his were severely injured and permanently damaged.

37. Upon information and belief, as a direct, legal and proximate result of the negligence, the defendant as described above, plaintiff JOHN DRAGHI has incurred and suffered personal injuries, physical suffering and severe mental and emotional pain and distress.

38. Upon information and belief, as a direct, legal and proximate result of the negligence, the defendant as described above, plaintiff JOHN M.DRAGHI has incurred and suffered disfigurement and severe and permanent physical, and neurological disabilities.

39. Upon information and belief, as a direct, legal and proximate result of the negligence, of the defendant as described above, plaintiff JOHN M. DRAGHI incurred and suffered past and future medical, hospital nursing, life-time care and incidental expenses.

40. Upon information and belief, as a direct, legal and proximate result of the negligence, of the defendant as described above, plain JOHN M. DRAGHI has incurred and suffered loss of earning potential and ability to pursue usual regular employment.

AS AND FOR A SECOND CAUSE OF ACTION FOR STRICT LIABILITY

41. Plaintiff repeat, reiterate and incorporate here by reference all of the foregoing paragraphs contained hereinabove in this Complaint, and repeat all assertions and allegations of said paragraphs as though set forth here in full.

42. Plaintiff are informed and believe and thereupon alleges that the SUBJECT HELMET and its component parts, helmet retention system, impact protection system, ingredients, packaging, mounting and constituents thereof, or lack of same, were defectively sold, designed, manufactured, fabricated, distributed, retailed, wholesaled, recommended, tested, controlled, created, processed, prepared, constructed, packaged, utilized, provided, maintained, leased, rented, vended, installed, handled, analyzed, inspected, supplied, and placed into the stream of commerce by the defendant or through their predecessor(s) in interest.

43. Upon information and belief, the SUBJECT HELMET failed to perform as safely as an ordinary consumer equipment would have expected when used in a manner reasonably foreseeable to the defendant.

44. Upon information and belief, the benefits of the design of the SUBJECT HELMET did not outweigh the risks inherent in the design of the SUBJECT HELMET.

45. Upon information and belief, the aforementioned defects existed at the time that the SUBJECT HELMET was tested, manufactured, distributed and sold by the defendant and the SUBJECT HELMET reached plaintiffs in the condition in which it was manufactured, distributed and sold by said defendant, the defendant knew that the SUBJECT HELMET was to be used without inspection for defects by plaintiffs.

46. Upon information and belief, as a direct, legal and proximate result of the aforementioned design defects, as described above, when JOHN M. DRAGHI landed on the ROADWAY, his head, brain, and other areas of his body were severely injured and damaged.

47. Upon information and belief, as a direct, legal and proximate result of the aforementioned design defects, as described above, plaintiff JOHN M. DRAGHI has

incurred and suffered personal injuries, physical suffering and severe mental and emotional pain and distress.

48. Upon information and belief, as a direct, legal and proximate result of the aforementioned design defects, as described above, plaintiff JOHN M. DRAGHI has incurred disfigurement and severe and permanent physical, mental and neurological disabilities.

49. Upon information and belief, as a direct, legal and proximate result of the aforementioned design defects, as described above, plaintiff JOHN M. DRAGHI have incurred and suffered past and future medical, hospital, nursing, life-time care and expenses on behalf of plaintiff JOHN M. DRAGHI.

50. Upon information and belief, as a direct, legal and proximate result of the aforementioned design defects, as described above, plaintiff JOHN M. DRAGHI has incurred and suffered loss of earning potential and ability to pursue usual and regular employment.

51. As a result of the negligence of the defendant as alleged hereinabove, the plaintiff was physically injured, lost wages or income, suffered mental and physical pain, and incurred medical expenses in the amount of THIRTY ($30,000,000.00) MILLION dollars.

WHEREFORE, plaintiff respectfully prays for judgment against the defendant on the First and Second Causes of Action in the total amount of $30,000.000.00; A jury trial on all issues triable by jury; Plaintiff's costs in this suit; Any additional relief this court deems just, proper and equitable.

Dated: New York, New York

May 26, 2016

Respectfully Submitted:
LLOYD A. KATZ (LK8498)
Attorney for Plaintiff, John M. Draghi
875 Sixth Avenue, Suite 1802
New York, New York 10001

11